Judge Mills:
delivered the Opinion of the Court.
John O'Bannon, new deceased at the May court for Bracken county applied for and obtained the establishment of a Ferry accross the Ohio river from his lands near the mouth of Ball Skin, and complied with the requisites of the law in giving land and contendent the enjoyment of the privilege
Grant renewed by the court.
Houston’s grant for a ferry within less than a half mile.
Cotton, O'bannon's heir, opposes the grant to Houston—Evidence on the case in the county court.
Statutes concerning Ferries across the Ohio.
At the March court 1816, he applied for and obtain a new grant for his ferry across the same stream, and gave a new bond with security, and continued the use thereof.
At the May court 1822, George Houston, the appellee, applied for and obtained the establishment of a Ferry from his land, across the river, within three or four hundred yards of the ferry of O’Ban non.
To oppose this application. George T. Cotton, the executor and heir of O'Bannon, appeared in court, and contested the right to grant it, and shewed the former grant, which he held as the representative of O'Bannon. But on its being proved to the court, that there was a small stream putting in between them, impassable at, its mouth, but passable at any time when the road went hid ween the rivet and the hill — that the ferry of O'Bannon, for the last three years, had not been well attended to — that a boat.had been kept there during that time, but it had siot been used, and that boat was swept of by the ice the preceding winter — and the public experienced some inconvenience from it- — and the old ferry, during said three years, was leased by O’Bannon or his representative, to the owner cf a ferry on the opposite side of the river, and the lesse of the ferry attended to it — and at all times, during said three years, whenever a person came to the river on this side, in order to cross, and blew a horn, the lessee on the other side, would come and fake him over — the court granted the new ferry, and Cotton excepted and appealed.
We cannot concur with that court in the propriety of the grant to Houston, or admit the right to establish his ferry.
The act of 1806, 1 Dig. L. K. 591, expressly restrains the county courts from establishing femes across the Ohio, when there is another ferry within one mile above or below the ferry applied for, except in a town, or where it shall he made necessary, by the putting into the river of some impassable creek or opposite to some established ferry in The *290 Ohio State. A second act of 1812, 1 Dig. L. K. 593, defines that mile, at which the second ferry may be established, to be one mile on a straight line. And an act of 1319, 1 Dig. L. K. 593, declares that, thereafter, “no ferry shall be established on the Ohio river, to the opposite shore, nearer than oile and a half miles above, or one and a half miles below any other ferry that has heretofore, been established, or may hereafter be established, except it be in a town, where an impassable river intervenes.”
The intervention of a small creek, impassable at its mouth, will not warrant the establishment of a ferry on the Ohio, within less than a mile and a half of a former ferry.
Neglect of the owner of a ferry, to attend and transport passengers, is no cause for the establishment of another ferry within the prohibited distance—The ferryman is subject to fine—action on his bond—and the grant may be repealed by the court.
It is not pretended that either of these ferries are in a town, or opposite to another on the shore of the State of Ohio, except that of the appellant. The small creek putting in between the two, does not come up to that kind of impassable stream intervening, required by the statute, to authorize a second grant. It is stated to be impassable at its its mouth. So any rivulet or ravine may be, however small, owing to the height of its hanks, or the ebbing of the water from the river. Rut (his, out the usual road, at a small distance from the river, is stated to be passable at any time; and therefore* presented no obstruction to passing up or down the stream.
The neglect of the owner of Cotton's ferry, as proved, or the leasing it to the ferry-holder of the opposite shore, certainly did not forfeit the franchise, or authorize the court to treat, it as a nullity. By such neglect, the owner might ho guilty of a breach of his bond — and for failing to transport a passenger in due time, he is made liable to a fine, before a justice of the peace, not exceeding four dollars, 1 Dig. L. K. 593, Moreover, the county court, for neglect or obstinately refusing to ’perform any of his duties, are authorized, on summoning him to show cause, to discontinue bis ferry’ and annul his grant. Neither of these things wore done by the county court, in this instance. But the punishment inflicted for his neglect, is the rivaling his privilege by another grant. However politic or expedient such a corrective night he, it can not be urged in support of the decision of the court below,. *291 This argument must be addressed to another department of the government, and not the judiciary. To them it is sufficient to say, that the law is otherwise.
Crittenden for appellants; McConnell for appellee.
The order granting the ferry to Houston, and all subsequent proceedings thereon, must be reversed, anti set aside with costs.